**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1193
_____

ALEXANDER ISRAEL AMAGUA-ZAPATA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No.  A204-274-088)
Immigration Judge:  Pallavi S. Shirole
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 28, 2022
_____

Before:  CHAGARES, <u>Chief Judge</u>, McKEE and MATEY, <u>Circuit Judges</u>

(Filed January 31, 2022)
_____

OPINION[*]
_____

_____

[*]  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Alexander Israel Amagua-Zapata petitions this Court to review a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from the Immigration Judge's ("IJ") order denying Amagua-Zapata's petition seeking cancellation of removal. For the reasons that follow, we will deny the petition.

I.[1]

Amagua-Zapata, a native and citizen of Ecuador, has resided in the United States since he was under three years old. He concedes his removability and seeks cancellation of removal based on his relationship with his mother, a lawful permanent resident of the United States. See 8 U.S.C. § 1229b(b).

Amagua-Zapata testified before the IJ that his mother depends on his assistance with her medical issues and the household finances. In addition, he testified to their close bond and his belief that, because his older brother passed away in 2009, his removal would be akin to his mother losing a second child. He also testified to having good moral character, although he acknowledged that he was convicted for driving under the influence ("DUI") of alcohol in 2017 and 2019.

The IJ concluded that Amagua-Zapata failed to establish the requisite exceptional and extremely unusual hardship to his mother or good moral character for the ten-year period preceding his application. See 8 U.S.C. § 1229b(b)(1)(B), (D). Among other things, the IJ concluded that Amagua-Zapata's mother would not suffer exceptional and

_____

[1] Because we write only for the parties, we recite only those facts pertinent to our decision.

extremely unusual hardship since she has medical insurance, a job, and other family members to rely upon, and because Amagua-Zapata's removal would not be akin to losing a child, as his mother could speak to him and visit him in Ecuador. In addition, the IJ concluded that Amagua-Zapata's two DUI convictions resulted in a presumption that he lacked good moral character during that time, see Matter of Castillo-Perez, 27 I. & N. Dec. 664, 669 (Att'y Gen. 2019), and Amagua-Zapata did not overcome the presumption with substantial, relevant, and credible evidence demonstrating that the convictions were an aberration. Id. at 671. Amagua-Zapata appealed the IJ's denial to the BIA.

The BIA dismissed Amagua-Zapata's appeal. The BIA saw no clear error in the IJ's factfinding and agreed with the IJ's conclusions. The BIA also rejected Amagua-Zapata's claim on appeal that the IJ committed error by not having his mother present live testimony. Amagua-Zapata timely filed this petition for review.

II.[2]

A.

Amagua-Zapata first claims that the agency "used the wrong legal standard and misapplied the law" in the determination that his mother would not suffer exceptional and extremely unusual hardship. Amagua-Zapata Br. 12. We have jurisdiction to consider

---

[2] Although we generally lack jurisdiction to review the denial of cancellation of removal, we have jurisdiction over colorable constitutional claims and questions of law. Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010); 8 U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D). A claim is colorable if it is not wholly insubstantial or frivolous. Pareja, 615 F.3d at 186. Where the BIA adopts and discusses the IJ's decision, we may review both decisions. See He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review constitutional claims and legal determinations de novo, subject, if appropriate, to principles of agency deference. Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010).

Amagua-Zapata's claim the BIA applied an erroneous standard. Pareja, 615 F.3d at 187–88. We conclude, however, that it did not.

Amagua-Zapata contends that the IJ improperly demanded hardship that is "unique, unconscionable or unbearable." Amagua-Zapata Br. 17. He also posits that the IJ erroneously failed to apply the factors set forth in Matter of Cervantes-Gonzales, 22 I. & N. Dec. 560, 565–66 (BIA 1999).

We disagree. The IJ concluded that Amagua-Zapata must show "that his qualifying relative would suffer hardship that is substantially beyond that which would ordinarily result from an alien's removal." Appendix ("App.") 14. This is the correct legal standard. See Pareja, 615 F.3d at 193. Moreover, the BIA's analysis in Cervantes-Gonzales is inapposite. That decision sets forth factors that the BIA considers for waiver of inadmissibility, which has a different standard from cancellation of removal. See 22 I. & N. Dec. at 565 (discussing "extreme hardship" standard).

Finally, Amagua-Zapata argues that the IJ "disregard[ed]" his mother's psychological state in reaching the hardship determination. Amagua-Zapata Br. 18. Yet the decision clearly reflects that the IJ considered the psychological evidence. See App. 14 ("In coming to this decision, the Court has considered the psychological evaluation submitted by the respondent."). To the extent this is actually a claim that the IJ erred by failing to afford additional weight to his mother's psychological state, such an argument concerns the weighing of the evidence and falls outside of our jurisdiction. See Hernandez-Morales v. Att'y Gen., 977 F.3d 247, 249 (3d Cir. 2020) ("[A] disagreement about weighing hardship factors is a discretionary judgment call, not a legal question.").

4

B.

Amagua-Zapata next contends that the failure to have his mother appear "severely impacted" his ability to prove his claim and "potentially affected the outcome" of the proceeding. Amagua-Zapata Br. 21. While this is a constitutional claim over which we have jurisdiction, it lacks merit.

The IJ granted counsel permission for Amagua-Zapata's mother to provide telephonic testimony if needed, and counsel declined to do so. Moreover, Amagua-Zapata has not identified any evidence that his mother would have presented in live testimony that was not already before the IJ in her written statement, psychological evaluation, and other written materials. Amagua-Zapata therefore has not established that any action by the IJ caused him substantial prejudice. See Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006) (setting forth substantial prejudice requirement for a due process claim).

C.

Finally, Amagua-Zapata claims that he overcame the Castillo-Perez presumption against good moral character. See 27 I. & N. Dec. at 669. We need not reach the moral character determination, however, because the BIA's hardship determination is dispositive. See INS v. Bagamasbad, 429 U.S. 24, 25 (1976) ("As a general rule courts

5

and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

III.

For the foregoing reasons, we will deny the petition for review.[3]

---

[3] The Government moved to dismiss the petition for lack of subject matter jurisdiction, contending that Amagua-Zapata did not present any colorable constitutional claims or questions of law in his petition for review. As discussed herein, Amagua-Zapata presented some colorable claims. Accordingly, we deny the motion.